IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BRANCH BANKING & TRUST COMPANY,

        Plaintiff,

v.                              CIVIL ACTION NO.   5:11-cv-00473

FIRST AMERICAN TITLE INSURANCE
COMPANY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Defendant First American Title Insurance Company's Motion to Dismiss for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure ("First American Mot.") (Document 8), Motion to Dismiss of Barry L. Bruce and Barry L. Bruce & Associates For Failure To Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure ("Bruce Defs.' Mot.") (Document 11), and Barry L. Bruce and Barry L. Bruce & Associates' Motion to Dismiss Amended Complaint for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure ("Bruce Defs.' Sec. Mot.") (Document 19).  Upon consideration of these motions, the memoranda in support thereof and in opposition thereto, the reply and the entire record herein, the Court finds that Defendants' motions to dismiss should be denied.

1

## I. BACKGROUND

The dispute in this action involves a loan and title insurance transaction. The factual record, when viewed favorably to the Plaintiff, Branch Banking & Trust Company ("BB&T"), a North Carolina Bank, is as follows. In 2007, North-South Properties, LLC ("North-South"), sought a $5,000,000 line of credit from BB&T. As part of the loan transaction, North-South agreed to convey to BB&T, as collateral, 416.878 acres of land located on Route 63 in White Sulphur Springs, Greenbrier County, West Virginia. North-South executed a Credit Line Deed of Trust and Security Agreement in favor of BB&T. Prior to funding the line of credit, BB&T issued an escrow instruction letter to title agent, Defendants Barry L. Bruce and Bruce and Associates, L.C. ("Bruce Defendants"), in which it required, among other things, that the Bruce Defendants:

> [P]ay all sums, costs, and expenses required to fully satisfy the release and discharge [sic] any and all liens and encumbrances on or affecting the property, which might affect [North-South's] title to the property and which are required to be paid in order for you to issue the title policy to [BB&T] as described herein. Please note that no liens of any kind are permitted on the property other than [BB&T's] Deed of Trust.

(Pl.'s Complaint, Ex. 3, Escrow Instruction Letter from Pl.'s counsel, M. Kevin Garrison, Esq, to Defendant Barry L. Bruce, Esq, Barry L. Bruce and Associate, L.C., (July 6, 2007), (Document 1-3) at 3). The Bruce Defendants agreed to comply with the instructions contained in the letter. (*Id*.) BB&T alleges that it received assurances from the Bruce Defendants, by their signed opinion letter and agreement to comply with escrow closing instructions, that the BB&T Deed of Trust on the North-South Property constituted a first lien.

Additionally, as part of the line of credit transaction, BB&T, through the Bruce Defendants, obtained title insurance on the North-South Property from Defendant First American

Title Insurance Company ("First American"). On July 11, 2007, First American, a California company, issued Policy No.A221202541-WVALe (hereinafter "Policy"), in the amount of $5,000,000. (Pl.'s Complaint, Ex.1, Policy of Title Insurance, First American Title Insurance Company, (Document 1-1). The Policy protected BB&T against loss or damage sustained or incurred by reason of, among other things, title to the estate being vested other than as described in the policy, any defect in or lien or encumbrance on the title, unmarketability of the title, and the priority of any lien or encumbrance over the lien of the insured mortgage. (*Id*.) The Policy also provided First American with "the right, at its own costs, to initiate and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured." (*Id*. § 4(b)).

BB&T alleges that upon the assurances and commitments made by the Bruce Defendants and the insurance coverage provided by First American, it funded the $5,000,000 loan to North-South. Thereafter, North-South failed to make timely payments and to perform as it contracted under the Loan Agreement, Promissory Note and BB&T Deed of Trust. Upon North-South's default of its obligations, BB&T began to investigate the possibility of foreclosing on the property. BB&T learned that the property appeared to be encumbered by a Deed of Trust granted from North-South's predecessor, White Rock, LLC, which constituted a first lien over its secured interest.[1] BB&T alleges that it notified First American of the claim against its title on June 4, 2010. (*See* Pl.'s Complaint, Ex. 2, Notice of Title Claim Letter from Pl.'s Counsel, M. Kevin

---

1  BB&T alleges that on February 2, 2005, Charles E. Withrow conveyed an 885.53 acre tract of land, located on Route 63 to White Rock, LLC. On or around February 5, 2005, White Rock, LLC, granted to J. Steven Hunter, Trustee, for the benefit of Charles E. Withrow, Beneficiary, a Deed of Trust to the Route 63 property in order to secure payment of a promissory note. To be consistent with the references made by the parties, the Court will refer to this Deed of Trust as the Withrow Deed of Trust. On November 15, 2006, White Rock, LLC, conveyed a portion of that large tract of land, approximately 416.878 acres, to North-South.

Garrison, Esq, to Defendant First American Title Insurance Company, (June 4, 2010), (Document 1-3)). Plaintiff further alleges that Charles Withrow, through counsel, has asserted that his Deed of Trust is a prior lien to the BB&T Deed of Trust as to a portion of the North-South Property. The Policy did not except the 2005 Withrow Deed of Trust. BB&T asserts that because the title to the North-South Property is "clouded," it is unable to foreclose on the property, take possession and protect the asset, or convey the property to recover the monies advanced to North-South. BB&T alleges that it has been deprived of the security to satisfy or partially satisfy its loan.

BB&T also alleges that for more than a year, First American has unreasonably delayed the filing of an action to quiet title, interfered with the independent professional judgment of counsel it hired to represent BB&T, instructed the same counsel to disregard BB&T's instructions, refused requests from BB&T to allow it to foreclose or take a deed in lieu of foreclosure, and refused BB&T's request to have the property conveyed to a subsidiary, but subject to the BB&T Deed of Trust, to insure protection of the collateral. As of the filing of the Complaint, First American has refused to clear title to the property, remove the lien of the Withrow Deed of Trust, provide marketable title, access to and ownership of the North-South Property or reimburse BB&T for the substantial loss and damage incurred as a result of the Withrow Deed of Trust.

In its Complaint, BB&T asserts seven causes of action. As against Defendant First American, BB&T asserts a declaratory action to determine whether Defendant is obligated to provide coverage to BB&T under the Policy; breach of contract; common law bad faith and statutory bad faith, in violation of West Virginia Code § 33-11-4(9). Additionally, BB&T asserts three claims against the Bruce Defendants for breach of contract, intentional and/or negligent misrepresentation and professional and/or common law negligence. As part of its jurisdictional allegation, Plaintiff alleges that venue is proper in this Court because a substantial part of the

events giving rise to this claim occurred in this district and "because a substantial part of property, *title of which is at issue in this action*, is situated in this district." (Compl. ¶ 7) (emphasis supplied.) Plaintiff requests that the Court enter a declaration of its rights and interests related to the Title Insurance Policy, declare that all losses and damages it suffered as a result of the Withrow Deed of Trust are covered by the Policy, and enter an award of compensatory, statutory and punitive damages, attorney fees and costs.

## II. PROCEDURAL HISTORY & THE PARTIES' WRITTEN CONTENTIONS

### A. *First Motions to Dismiss*

On August 8, 2011, First American moved to dismiss Plaintiff's Complaint. First American, in reliance on Plaintiff's venue averment (*see* Compl. ¶ 7), contends that this action centrally concerns the current condition of title to various parcels of real estate. (Memorandum of Law in Support of Defendant First American Title Insurance Company's Motion to Dismiss for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure ("First American's Mem.") (Document 9) at 1.)) As a result of its theory of the case, First American argues that Plaintiff should have joined Charles E. Withrow, White Rock LLC, North-South Properties, LLC., Veronica Clardy and Jerry M. Holmes, guarantors of the BB&T line of Credit to North-South, White Rock Mountain Retreat Property Owner's Association, Inc., holder of certain Declaration of Restrictive Covenants, and Unknown John Does, owning or claiming an interest in one or more of the various lots or parcels comprising the North-South Property. (First American's Mem. at 2-3). First American asserts that these entities are necessary and indispensable parties because they claim or own an interest in the North-South Property and any determination with respect to the title to the Property "will directly affect or determine the scope of rights or interests [of these parties]." (*Id*. at 5.) First American argues that

these parties are all materially interested, legally or beneficially, in the subject matter involved in this case and that a lawsuit to cancel a cloud of title to real estate must include all parties who claim an interest, right or title to the property. (*Id*. at 4). First American argues that the absence of these parties will "impair or impede [their] . . . ability to protect their interests and subject existing parties to a substantial risk of incurring inconsistent obligations[.]" (*Id*. at 5.) On August 10, 2011, the Bruce Defendants filed a substantially identical motion to dismiss and a supporting memorandum. (Documents 11 and 12).[2]

Thereafter, on August 22, 2011, Plaintiff filed an Amended Complaint wherein it removed the portion of its venue allegation that provided that title of the North-South property is at issue in this case. (Amended Complaint (Document 13), ¶ 7.)[3] Plaintiff added five additional averments to specifically assert that the nature of this case does not involve a declaration of title to the North-South Property and that this civil action "will not determine the rights or interests of any person to any property." (Am. Compl., ¶ 27.) Plaintiff focused its new allegations on the title insurance policy it obtained, the rights thereto and First American's acknowledgment that title to the North-South Property is contested. (*Id*. ¶¶ 28-31.) Plaintiff also alleges that First American is acting in bad faith by "wrongfully insisting that its insured litigate title, rather than doing so itself as the Policy requires." (*Id*. ¶ 31.)

---

2   The Court observes that the only substantive difference between the Defendants' motions to dismiss is that the Bruce Defendants do not contend that there are unknown John Does claiming an interest in the North-South Property. (*See* Memorandum of Law in Support of Motion to Dismiss of Barry L. Bruce and Barry L. Bruce & Associates for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure (Document 12) at 3).

3   In its Opposition to Defendants' motion to dismiss, Plaintiff explains that it "mistakenly asserted that title was at issue 'in this case,'" but that this mistake amounts to a "scrivener's error" immaterial to its prayer for relief. (Response in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") (Document 14) at 2, n.2.) Plaintiff notes that its prayer for relief did not include such a determination. (*Id*.)

On the same day, Plaintiff offered a combined opposition to the Defendants' motions to dismiss. Plaintiff asserts that Defendants' motions are moot in light of the amendment to its Complaint. Plaintiff also denies that all parties claiming a title to the North-South Property must be included in this case. Plaintiff contends that it has not requested a declaration of title to the property and that the actual rights and interests to title are immaterial to Defendants' contractual obligations. Plaintiff also contends that the Defendants misapprehend its claims, insisting that "[o]nly contractual obligations and professional negligence under the title insurance transaction are at issue in this case." (Pl.'s Opp'n at 8.) Plaintiff argues that all parties to the title insurance transaction have been named in this action; that no other party can claim any benefit of the transaction and that additional parties are not necessary to afford complete relief between the existing parties. Plaintiff also argues that Defendants fail to demonstrate: (1) that any absent party has claimed an interest in the subject matter of this case, the title insurance transaction or (2) how multiple liabilities or inconsistent obligations may arise from any award in this case. Finally, Plaintiff argues that even if this Court were to find Defendants' identified parties as necessary and indispensable, dismissal is not warranted because the Court could craft relief in a manner not to prejudice absent parties. Plaintiff suggests the Court could order the joinder of the parties, abstain from certain rulings until title is determined or allow for consideration of its declaratory judgment count to proceed while the balance of its claims are stayed until the underlying title claims are resolved.

In separate submissions, the Defendants assert that their motions were not rendered moot by Plaintiff's Amendment and that the condition of title to the North-South Property is central to this action. First American insists that Plaintiff is required to prove a defect in title to establish its coverage under the title insurance and to recover any alleged loss or damage. (*See* Reply

Memorandum of Defendant First American Title Insurance Company to Plaintiff's Response to Motion to Dismiss For Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure ("First Am.'s Reply") (Document 18) at 3) ("[T]he amount of any title insurance claim must involve a determination as to the condition of title to the subject real estate including the value of the property interest as insured and the values of the property subject to the defect, lien or encumbrance."). First American argues that the language of its title insurance policy requires that before there can be a determination of coverage and whether it acted in bad faith, there must be an action to quiet title or to determine the validity and/or priority of liens and encumbrances made.

Similarly, the Bruce Defendants argue that central to Plaintiff's claims against them--for breach of contract, intentional and/or negligent misrepresentation and professional and/or common law negligence—is the allegation that they disbursed funds without clearing clouds on the North-South Property's title. The Bruce Defendants argue that the alleged cloud on the title must be determined and resolved before there can be any determination with respect to Plaintiff's claims against them or any award of damages. (*See* Reply of Defendants, Barry L. Bruce and Barry L. Bruce & Associates, L.C., in Support of Motion to Dismiss For Failure to Join Necessary and Indispensable Parties ("Bruce Defs.' Reply") (Document 16)). The Bruce Defendants also contend that Plaintiff, in its opposition, fails to address the Rule 19 argument, as it relates to these separate claims against them, and absent a resolution of the ownership interests of the property, that this Court cannot afford complete relief without prejudicing the rights of omitted parties or subjecting them to potentially inconsistent obligations.

    B. *Second Motions to Dismiss*

    On September 12, 2011, the Bruce Defendants moved to dismiss Plaintiff's Amended

Complaint for its failure to join necessary parties. (Barry L. Bruce and Barry L. Bruce & Associates' Motion to Dismiss Amended Complaint for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure (Document 19)). The Bruce Defendants continue to maintain that, as to the claims brought against them, a determination as to the title of the North-South Property is required prior to any resolution of Plaintiff's claims. These Defendants argue that Plaintiff can only attempt to prove damages against them if it can demonstrate conflicting ownership interests in the property, a demonstration that requires the joinder of those parties claiming an interest in the ownership of the property.

Plaintiff again contests the motion to dismiss. Plaintiff argues that the Bruce Defendants concede that there exists an "alleged cloud" on the title and that there "are conflicting ownership interests" to the North-South Property. Plaintiff further argues that since all parties agree that the title is clouded, this Court "need not determine who holds actual record title to the insured property or the ultimate priority of the BB&T Deed of Trust." (Response in Opposition to Barry L. Bruce and Barry L. Bruce & Associates' Motion to Dismiss BB&T's Amended Complaint ("Pl.'s Sec. Opp'n") (Document 21) at 2.) BB&T contends that its claims are independent of the status of title, that it has been unable to foreclose, protect and dispose of its collateral and that it has incurred substantial costs in attempting to resolve the issue, all of which entitle it to relief.

Thereafter, Defendant First American sought to join in the Bruce Defendants' Motion to Dismiss Plaintiff's Amended Complaint and submit a reply to Plaintiff's opposition thereto. (Defendant First American Title Insurance Company's Joinder in Motion to Dismiss and Reply Memorandum to Plaintiff's Response to Barry L. Bruce and Barry L. Bruce & Associates, L.C. Motion to Dismiss Amended Complaint for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure ("First American's Sec. Mot.")

9

(Document 22)). First American denies that it has made any concessions regarding the condition of title to the North-South Property and asserts that there is nothing preventing Plaintiff, as an alleged second deed of trust holder, from foreclosing, protecting or disposing of its interest in the subject property. First American maintains that Plaintiff's damage claims against the Bruce Defendants require a determination of the condition of title to the North-South Property. First American also contends that the North-South Property is comprised of multiple residential lots, common areas and a common parcel containing a large lodge used by the residents of the development. According to First American, any "alleged clouds on Plaintiff's title only pertains to certain portions of the property and not to other portions," and that a determination of the value and extent of the property on which "Plaintiff received a first lien deed of trust and a determination of the extent and value of the property on which Plaintiff received a second lien deed of trust must be made by the Court in order to determine whether Plaintiff has any claim under the . . . title insurance policy." (*Id*. at 2-3.) The Court observes that this is the first instance in which either Defendant asserted that Plaintiff's Deed of Trust may have varying priority security interests.

### III. APPLICABLE LAW

Defendant moves for a dismissal of Plaintiff's claims, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, for Plaintiff's failure to join a party. Rule 19 of the Federal Rules of Civil Procedure, the rule controlling the required joinder of parties, establishes a two-step analysis for a district court to determine whether a party should be joined in an action. The initial inquiry requires the court to determine whether the party is "necessary" to the action pursuant to Rule 19(a).[4] If the court so finds, it must then determine whether the party is "indispensable" to the

---

4   Rule 19(a) provides in relevant part:
    A person who is subject to service of process and whose joinder will not deprive the court of subject-matter

action under Rule 19(b).[5]  *See Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917-18 (4th Cir. 1999).  "Only necessary persons can be indispensable, but not all necessary persons are indispensable." *Schlumberger Indus., Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1994).  The Fourth Circuit Court of Appeals has instructed that a court, "[i]n determining whether a party is necessary and, then, indispensable . . . must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Schlumberger*, 36 F.3d at 1286. (citation omitted).

Although this Court is charged with consideration of a multi-factor test, the Fourth Circuit Court of Appeals has admonished the district court that "[d]ismissal of a case is a drastic remedy . . . which should be employed only sparingly." *Keal*, 173 F.3d at 918.  Such a decision "must be made pragmatically, in the context of the substance of each case, rather than by procedural formula." (*Id.*) (citation omitted).  Further, "[a] court must examine the facts of the particular

---

    jurisdiction must be joined as a party if:
        (A) in that person's absence, the court cannot accord complete relief among existing parties; or
        (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
            (i) as a practical matter impair or impede the person's ability to protect the interest; or
            (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
Fed.R.Civ.P. 19(a).

5    Rule 19(b) states:
    If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
        (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
        (2) the extent to which any prejudice could be lessened or avoided by:
            (A) protective provisions in the judgment;
            (B) shaping the relief; or
            (C) other measures;
        (3) whether a judgment rendered in the person's absence would be adequate; and
        (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.
Fed.R.Civ.P. 19(b).

controversy to determine the potential for prejudice to all parties, including those not before it." (*Id.*) (citing *Schlumberger*, 36 F.3d at 1285-86); *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 250 (4th Cir. 2000). The party seeking dismissal for nonjoinder has the burden of demonstrating that a party is necessary and indispensable.

### IV.  DISCUSSION

Defendants assert that dismissal of this action is warranted for Plaintiff's failure to join Charles E. Withrow, White Rock LLC North-South Properties, LLC., Veronica Clardy and Jerry M. Holmes, White Rock Mountain Retreat Property Owner's Association, Inc., and Unknown John Does. Defendants insist that these persons and entities are necessary and indispensable to this action because they own or claim an interest in one or more of the various lots or parcels which encompass the North-South Property. Chief among Defendants' contentions is that procedurally, a determination of the title of the North-South Property is required prior to any consideration of Plaintiff's claims since the extent and nature of the title to the North-South Property will be determinative of Plaintiff's claims for coverage and damages as against all Defendants. Specifically, First American argues that the title insurance policy provides that it is a "contract of indemnity against actual monetary loss or damages" and that the extent of its liability is described, among other options, as "the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by [the] policy." (Document 18 at 3) (citing Pl.'s Complaint, Ex.1, Policy of Title Insurance, First American Title Insurance Company, (Document 1-1) at 3, ¶7(a)(iii)). Moreover, First American argues that the insurance policy provides limits of its liability, specifically, that:

>    in the event of any litigation, including litigation by the Company or
>    with the Company's consent, the Company shall have no liability
>    for loss or damage until there has been a final determination by a
>    court of competent jurisdiction, and disposition of all appeals
>    therefrom, adverse to the title or to the lien of the insured mortgage,
>    as insured.

(Pl.'s Complaint, Ex.1, Policy of Title Insurance, First American Title Insurance Company, (Document 1-1) at 3, ¶8(b)).[6] According to Defendants, any determination of title must include the named persons or entities because the outcome will affect the scope of their rights and interests. Plaintiff refutes that third-parties are necessary in a civil action premised upon contractual relationships in which all of the parties to those contracts have been named as a party.

Upon consideration of the parties' written submissions, the Court observes that the threshold issue to be resolved is whether Plaintiff has asserted a claim or claims which require the declaration of title to the North-South Property. In a simple word, the answer is yes. Fairly read,

---

6   The title insurance also details its limitation of liability as follows:
   (a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
   (b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.
   (c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.
   (d) The Company shall not be liable for:
       a. Any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or
       b. Construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

Plaintiff's Amended Complaint is that it obtained title insurance from Defendant First American to protect its interest in real estate securing a $5,000,000 line of credit. In doing so, it conditioned its funding of the line of credit on being a first lienholder on the property. It received assurances from the Bruce Defendants that no other interest encumbered the property senior to its interest. However, it has since learned that someone else holds a higher interest to the property and that it is not the first lienholder as it believed or was assured. Plaintiff's Amended Complaint concerns claims arising from the procurement of a title examination and title insurance policy. Although, the focal point of this litigation concerns negligence, contractual obligations and the alleged breach of such obligations, the Court finds that Plaintiff's claims and requested relief cannot be viewed so narrowly. In count one of the Amended Complaint, Plaintiff seeks a declaration to determine whether First American is obligated to provide coverage under the title insurance policy. The core determination of such a request for relief is whether Plaintiff's contracted interest is adverse to another's interest. There is no dispute among the parties that the relevant title insurance policy insured against loss or damage incurred by reason of any defect in or lien or encumbrance of the title, or the priority of any lien or encumbrance over the lien of the insured mortgage. Moreover, Plaintiff has alleged that it has been unable to foreclose, protect or dispose of the property and that it has asked Defendant First American to take action on its behalf, to no avail. Plaintiff alleges that it has been damaged as a direct and proximate result of the failure of First American to comply with its obligations. However, the language of the title insurance policy contemplates that First American will not be liable for any loss or damage prior to a determination that an interest exists which is adverse to the title or lien of the insured mortgage. It is apparent to the Court that this clause necessarily requires that procedurally there be a determination as to whether the title insured is actually defective and that Plaintiff does not hold

the interest for which it contracted. The Court is also mindful that Defendants contend that the "alleged cloud on Plaintiff's title only pertains to certain portions of the property and not to other portions" and that Plaintiff received a first deed of trust on a portion of the property and a second lien deed of trust on another. (Document 22). Given these representations and the text of the insurance policy cited above, before this Court can consider any claim beyond Plaintiff's declaratory action regarding the nature of First American's coverage, there must first be a determination of the title and interest of the land BB&T holds as collateral for its line of credit and whether any person or entity holds a valid interest adverse to BB&T. Defendants have identified various persons or entities it asserts hold an interest in the North-South Property. The absence of any person or entity which holds such an interest would preclude this Court from according complete relief as between these existing parties, and any determination by this Court relative to an interest in the property could potentially prejudice an absent party. Defendants have failed to demonstrate why these persons or entities cannot be joined in this action. To that end, the Court finds, on these facts, that dismissal is not appropriate in this case.

Inasmuch as the Court has found that a determination is required regarding the nature of the title or interest secured by BB&T in the North-South Property prior to any consideration of the balance of the claims alleged against First American and the Bruce Defendants, the Court finds that a stay as to the balance of these claims is warranted. This matter shall proceed, in the first instance, upon count one as against First American. Plaintiff is directed to hereby join any person or entity holding an interest in or title to the North-South Property secured by its Deed of Trust or any party it contends holds a claim adverse to its interest, no later than sixty (60) days from the date of this order. The Court has considered the posture of this case and finds that proceeding in this fashion does not impose any prejudice on any of the currently named parties.

*V.   CONCLUSION*

Upon consideration of the foregoing, the Court does hereby **ORDER** that Defendant First American Title Insurance Company's Motion to Dismiss for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure (Document 8) be **DENIED**, that the Motion to Dismiss of Barry L. Bruce and Barry L. Bruce & Associates For Failure To Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure (Document 11) be **DENIED,** and that Barry L. Bruce and Barry L. Bruce & Associates' Motion to Dismiss Amended Complaint for Failure to Join Necessary and Indispensible [sic] Parties Pursuant to Rule 19 of the Federal Rules of Civil Procedure (Document 19) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:	February 17, 2012

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA